IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-CV-00091-RLV
(5:08-CR-00008-RLV-DSC-1)

| | | |
|---|---|---|
| TIMOTHY LEROY NIXON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the Court on Respondent's motion to dismiss Petitioner's pro se motion to vacate, set aside or correct sentence, which he filed pursuant 28 U.S.C. § 2255. For the reasons stated herein, the Court finds that Respondent's motion to dismiss should be granted and Petitioner's § 2255 motion will be denied and dismissed.

I.     BACKGROUND

    A.     Indictment

Petitioner was named as the sole defendant in an indictment returned by the Grand Jury in this district. The indictment charged one count of possession of 5 grams or more of crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count One); one count of possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C § 924(c)(1) (Count Two); and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three). (5:08-CR-00008, Doc. No. 3: Indictment). In addition to the indictment, the Government filed a notice of its intention to seek enhanced penalties, pursuant to 21 U.S.C. § 851, based on Petitioner's three prior felony drug

1

convictions which were sustained in North Carolina state courts. (Id., Doc. No. 4: § 851 information).[1]

B.  Motion to Suppress

Petitioner, through counsel, filed a motion to suppress evidence that was seized by law enforcement following a search of his vehicle on July 25, 2007, contending that the search violated his right to be free from an unreasonable search and seizure under the Fourth Amendment. (Id., Doc. No. 18: Motion to Suppress). According to the suppression motion, Petitioner was stopped by law enforcement on July 25th, at a driver's license checkpoint in Iredell County, and he was informed that he would be issued citations for driving while his license was revoked and for displaying an expired inspection sticker. Petitioner was instructed to sit in the police vehicle while the citations were being prepared, but before he could enter the vehicle, one of the officers allegedly searched him and discovered four pieces of what appeared to be crack cocaine. Upon making this discovery, officers then searched the trunk of Petitioner's car and found a locked safe which was removed and searched by the officers; the search yielded a firearm and drug paraphernalia. Petitioner argued that the search of his person and his vehicle violated his Fourth Amendment rights because officers failed to secure a warrant prior to conducting the searches. The Government filed a response opposing Petitioner's motion suppress the evidence discovered during the July 25th search and the matter came on for hearing before the undersigned.

The evidence presented by the Government at the suppression hearing painted a far different picture than the anemic recitation of facts that were proffered in the suppression

---

[1] The allegations in the indictment are inspired by events that occurred during a traffic stop on July 25, 2007, where police recovered crack cocaine and a firearm from both Petitioner and his vehicle.

motion. The evidence and testimony showed the following: On July 25, 2007, the Iredell County Sheriff's Department operated a driver's license checkpoint and Petitioner was stopped by law enforcement; Petitioner informed the police that he did not have a driver's license and he appeared nervous during this encounter. Sergeant Boyd asked Petitioner to pull over to the side of the road and he complied. After brief questioning, Petitioner informed Sgt. Boyd that he did not have a license because it had been revoked.[2] Sgt. Boyd observed that Petitioner's State inspection sticker was expired, and based on the revoked license and the expired sticker, Sgt. Boyd decided to issue Petitioner a citation and he asked him to sit in the patrol car while he prepared the ticket. Prior to seating Petitioner in the car, Sgt. Boyd inquired whether Petitioner had any contraband on his person, and Petitioner, while still acting nervous, stated that he did not. Sgt. Boyd then asked for and was granted consent to search Petitioner and during the search Sgt. Boyd found a pill bottle that fell out of Petitioner's shorts; the bottle contained four crack rocks. Petitioner was placed in handcuffs at this point, and another officer on the scene, Lieutenant Meyer, assisted Sgt. Boyd by asking Petitioner whether there was any contraband in Petitioner's vehicle, and he volunteered that there was more crack in the floorboard of his car under the passenger seat. During the search of the vehicle, a safe was discovered in the trunk and a canine was brought in and promptly alerted to the presence of narcotics. The police opened the safe and found a .38 revolver, scales, and other drug paraphernalia.

After hearing from the parties and considering the applicable law, the Court found that the motion to suppress should be denied, and the matter was then set for a jury trial. See (Id., Doc. No. 29: Suppression Tr.; Doc. No. 32: Order on Motion to Suppress).

---

[2] Driving While License Revoked (DWLR) is a class one misdemeanor under North Carolina law and can lead to an immediate arrest upon a finding of probable cause that the offense has been committed. See N.C. Gen. Stat. § 20-28 (2007).

C. Trial and Sentencing

Petitioner was convicted on all three counts in his indictment after a two-day jury trial and the U.S. Probation Office then prepared a draft of a presentence report (PSR) in advance of his sentencing hearing. (Id., Doc. No. 42: Jury Verdict). After the parties had an opportunity to comment on the draft, the probation officer filed the final PSR. The probation officer found that Petitioner had a total offense level of 24, criminal history category VI, which yielded a Guidelines range of 120 to 125 months' imprisonment plus a mandatory minimum, consecutive term of 5-years' incarceration for the possession of the firearm during and in furtherance of the drug trafficking offense as charged in Count Two (hereinafter "the § 924(c) charge").

The Court overruled Petitioner's objection in which he contended that the .38 caliber revolver that was recovered from the safe in his trunk did not belong to him. The Court found that the evidence presented at trial supported the jury's verdict of guilty on that count. Having resolved the objections, the Court found that the PSR correctly calculated the Guidelines range and that its contents were credible and reliable. The Court then heard from the parties on the issue of the appropriate sentence.

Petitioner's counsel noted that Petitioner had already pleaded guilty in Iredell County Superior Court to charges that arose out of the July 25th arrest and search of his person and his vehicle and that he was given an active sentence.[3] Accordingly, his counsel argued that the Court consider that fact and urged that Petitioner be sentenced to the mandatory minimum sentence.[4]

---

[3] Petitioner pled guilty to possession two counts of possession with intent to sell or deliver cocaine, and he was sentenced to an active term of 15 to 18 months' imprisonment in the North Carolina Department of Corrections. The State agreed to dismiss the other charges which included possession of drug paraphernalia and the possession of a firearm by a felon. See (Id., Doc. No. 47: PSR ¶¶ 11 and 68; Doc. No. 60: Sentencing Tr. at 7-8).

[4] In addition to the Guidelines range, Petitioner was subject to a mandatory minimum sentence of 120-months based on the convictions set forth in § 851 information under 21 U.S.C. § 841(b)(1)(B).

Petitioner declined to address the Court. The Government did not object to the mandatory minimum sentence and the Court sentenced Petitioner to 120-months on Counts One and Three, to run concurrently, and a mandatory term of 60-months in prison on the § 924(c) conviction to run consecutive to the sentences imposed in Counts One and Three. (Id., Doc. No. 53: Judgment). Petitioner appealed to the United States Court of Appeals for the Fourth Circuit.

    D.    Appeal

In his appeal, Petitioner first challenged this Court's ruling on his motion to suppress and he raised a challenge to the admission of certain evidence related to his being taken into custody on the day after his July 25th arrest; both of these arguments were rejected. In his final claim, Petitioner argued that this Court erred in denying his motion for judgment of acquittal on the § 924(c) conviction because there was no evidence to link the possession of the firearm to a drug trafficking offense. See United States v. Nixon, 396 F. App'x 1, 6 (4th Cir. 2010) (unpublished), cert. denied, 131 S. Ct. 1509 (2011). The Circuit Court observed that in order to convict Petitioner of a § 924(c) offense, "the Government was required to prove that Nixon: (i) committed a drug trafficking crime; and (ii) possessed a firearm in furtherance of that crime." Id. at 8 (citing 18 U.S.C. § 924(c)(1)(A)). The Court ruled that when considering the evidence in the light most favorable to the Government, a reasonable juror could have found Petitioner guilty of the offense beyond a reasonable doubt. Id. at 9. Petitioner's judgment was thereafter affirmed in all respects.

    E.    § 2255 Proceeding

In this collateral proceeding, Petitioner raises four claims for relief – three claims pertain

5

to ineffective assistance of counsel and one argument contends that he is entitled to be resentenced under the Fair Sentencing Act of 2010. Petitioner's claims will be examined below. The Government has filed a motion to dismiss the § 2255 motion in its entirety, contending that Petitioner failed to plead any set of facts or advance any arguments that could entitle him to relief. The Court advised Petitioner of his right to file a response to the Government's motion to dismiss, pursuant to Roseboro v. Garrison, 528 F.2d 309 (1975), and he has filed his response. (5:11-CV-00096, Doc. Nos. 5 and 6).

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

A. Ineffective assistance of counsel

The Sixth Amendment to the United States Constitution provides that all defendants charged with a crime have the right to assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the

6

wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on a claim of ineffective assistance of counsel bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id. A "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

The test for ineffective assistance of appellate counsel is the same as it is for trial counsel. Specifically, "[i]n order to establish a claim that appellate counsel was ineffective for failing to pursue a claim of direct appeal, the applicant must normally demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that there is a reasonably probability that, but for counsel's

7

unprofessional errors, the result of the proceeding would have been different." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (internal quotations and citations omitted). In addition, appellate counsel is entitled to a "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993); see also Smith v. Robbins, 528 U.S. 259, 288 (2000) (appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citing Jones v. Barnes, 463 U.S. 745 (1983)). a

      1.      Grounds One and Two[5]

Petitioner argues that both his trial and appellate counsel, who incidentally are one and the same, were ineffective because he failed to present a challenge to the Government's prosecution on the drug trafficking offense in Count One based on a violation of the Double Jeopardy Clause. As Petitioner maintains, because the State of North Carolina successfully prosecuted him on the charge of possession with intent to sell or deliver cocaine and he was sentenced to an active term of 15 to 18 months' imprisonment, then the Government was prohibited from pursuing a conviction on Count One because many of the allegations that were set forth in the indictment arose from the same conduct which led to his State conviction. (5:11-CV-00091, Doc. No. 1 at 4, 5; Doc. No. 1-1: Petitioner's Memo. at 1).[6]

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . ." U.S. Const. amend. V. While Petitioner's argument may appear compelling to him, it is surely one that his attorney would not have advanced at the trial level or on appeal. There is no statutory ban on a federal prosecution of

---

[5] Grounds One and Two are considered simultaneously as they raise the same argument.
[6] Citations are to the pages noted in the bottom footer generated by the Electronic Case Filing System.

conduct which has already been the subject of a state prosecution. Nor is there is any violation of the Fifth Amendment's Double Jeopardy Clause. See Bartkus v. People of State of Ill., 359 U.S. 121, 132 (1959); United States v. Iaquinta, 674 F.2d 260, 264 (4th Cir. 1982) ("[T]he doctrine of dual sovereignty [ ] recognizes that 'the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible.'") (internal citations and quotations omitted).

As discussed above, Petitioner was charged first by State authorities with the possession of the crack cocaine with intent to sell or deliver and the § 922(g) gun charge, among others, and he was later convicted on the former charge and was sentenced to an active prison sentence. This same conduct became the focus of his successful federal prosecution before this Court. However, because there is simply no prohibition on dual prosecutions for the same conduct, Petitioner has failed to demonstrate that his counsel's performance – whether at the trial or appellate level – was deficient. Petitioner's argument is without merit and it will be denied.

        2.        Ground Three

Petitioner here argues that his "trial/appellate counsel" was ineffective for failing to argue that the Fourth Circuit erred when it upheld this Court's ordering denying his motion for judgment of acquittal on the § 924(c) charge. (5:11-CV-00091, Doc. No. 1 at 7; Doc. No. 1-1 at 2). On direct appeal, Petitioner's "trial/appellate" counsel presented a challenge to this Court's denial of his motion for judgment of acquittal and the Fourth Circuit rejected this claim, along with his other two claims, and affirmed his convictions and sentence. Petitioner argues that after the Fourth Circuit rejected his challenge to the § 924(c) conviction, his counsel should have presented a challenge to this ruling in the petition for a writ of certiorari that his counsel filed

9

with the Supreme Court. Petitioner's counsel, did, however, file a petition for a writ of certiorari with the Supreme Court on December 22, 2010 (Case No. 10-8104), and the Court denied the petition without explanation on February 22, 2011. See Nixon v. United States, 131 S. Ct. 1509 (2011).

There are two reasons that this claim of ineffective assistance of counsel must fail. First, as the Government observes, there is no absolute right to certiorari review by the Supreme Court: "Review on a writ of certiorari is not a matter of right, but of judicial discretion." Sup. Ct. R. 10. (5:11-CV-00091, Doc. No. 3: Respondent's Brief at 11). And as there is no constitutional right to counsel for an indigent defendant in pursuing discretionary review, it must follow that there is no Sixth Amendment right to effective assistance of counsel. See Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("[W]here there is no constitutional right to counsel there can be no deprivation of effective assistance") (citing Wainwright v. Torna, 455 U.S. 586 (1982)). For the foregoing reasons, the Court finds that Petitioner has failed to state a claim under Strickland and this claim will be denied.

        3.        Fourth Claim

In this final claim, Petitioner argues that he is entitled to be resentenced under the Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124 Stat. 2372, which was signed into law on August 3, 2010. Through the FSA, Congress increased the quantity of crack cocaine that was necessary to trigger certain mandatory minimums sentences under the provisions of 21 U.S.C. § 841. However, the Supreme Court considered the very issue that Petitioner raises here and held that the FSA is not retroactive for petitioners that were sentenced prior to August 3, 2010, which is the effective date of the FSA. See Dorsey v. United States, 132 S. Ct. 2321, 2336 (2012)

(holding that the FSA applies to those offenders that committed offenses before the effective date but were sentenced after the effective date of August 3, 2010). Petitioner was sentenced in this Court on October 14, 2009, and his judgment was entered on October 21, 2009, thus he cannot benefit from the provisions of the FSA. Accordingly, Petitioner's claim for relief will be denied.

IV.     CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion fails to state any claim upon which relief may be granted and the Government's motion to dismiss will therefore be granted.

**IT IS, THEREFORE, ORDERED** that:

1. The Government's motion to dismiss is **GRANTED**. (Doc. No. 4).

2. Petitioner's § 2255 motion is **DENIED** and **DISMISSED**. (Doc. No. 1).

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: September 23, 2014

*[signature]*

Richard L. Voorhees
United States District Judge